UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID M. DOUGLAS,

                     Plaintiff,

     v.                         Case No. 1:10-cv-14-HJW

JOHN SWING, et al.,

                  Defendants

## ORDER

This matter is before the Court upon the defendants' motions for summary judgment" (doc. nos. 19, 21), which plaintiff opposes (doc. no. 27). Defendants filed proposed findings of fact and conclusions of law (doc. no. 18, 20), which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 33, 34).[1]  Having carefully considered the entire record, including the parties' briefs, exhibits, and related filings, the Court will grant both motions for the following reasons:

## I.  Background and Factual Allegations

The essential facts of the complaint are undisputed, and the defendants cite to evidence, including the state trial transcript (doc. no. 22, Ex. A "Trial TR"), the deposition of plaintiff (doc. no. 17), and the affidavit of Officer West (doc. no. 19-1). On January 16, 2009, at approximately 12:30 a.m., Miami Township Police Officer John Swing observed a car with no front license plate within the territorial

---

[1] Although this Court has repeatedly instructed by written order that only the movant files proposed findings of fact and conclusions of law, which the opponent then highlights (see doc. nos. 12, 32 "Orders"), plaintiff has filed his own version as well (doc. no. 28).  As plaintiff's filing is unnecessary and not in accordance with this Court's orders, the defendants need not file a highlighted version of it.

jurisdiction of Miami Township (doc. no. 20 at ¶¶ 1-2). He signaled for it to pull over.[2] The vehicle, with two males inside, turned onto Lakefield Drive just inside the city limits of Milford, Ohio, and stopped in front of a house (which turned out to be plaintiff's house) (¶ 2). Officer Swing stopped his cruiser several lengths behind, walked to the stopped car, asked the driver for his license, and returned to the cruiser to run a computer check on the drivers license and license plate (¶ 3).

While conducting this routine traffic stop, Officer Swing observed a van pull up alongside his cruiser, back up, and stop at an angle with its headlights pointing toward the stopped vehicle (¶ 4). The police cruiser was apparently blocking the plaintiff's driveway, although the officer did not know plaintiff lived there. Plaintiff (the driver of the van) then revved his engine and passed between the cruiser and the stopped vehicle (¶¶ 4-9).[3] While driving up over the curb, sidewalk, and into the yard, plaintiff stopped and yelled "It sure was nice of you to block my driveway."[4] Officer Swing replied "does that give you a right to drive through people's yards and

---

[2]Although plaintiff correctly notes that the proposed findings reflect an erroneous date in one sentence (doc. no. 34, at ¶ 1), this is an apparent typographical error that does not create a genuine dispute of material fact. The parties agree that the events at issue occurred on January 16, 2009 (doc. nos. 1 at ¶ 1; 21 at 30; 33 at ¶ 2).

[3]Although plaintiff "disputes" that he revved his engine, only disputes over material facts that could affect the outcome of the case will preclude summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson,, 477 U.S. at 248; see also, 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983).

[4]Witnesses testified that street parking was available (Trial TR 15, 26).

interfere with my traffic stop?" (¶ 10). Officer Swing warned plaintiff that he could be arrested for obstructing official business. Plaintiff said he wanted to be arrested and repeatedly encouraged the officer to go ahead and arrest him (¶ 11, citing Douglas Dep., Ex. 2; see also Trial TR 63). Plaintiff acknowledges that he drove over the curb through the yard onto the driveway (doc. no. 1 at ¶¶ 2-3; Douglas Dep. 130-135). Officer Swing and plaintiff (who was still seated in his vehicle) exchanged words. Plaintiff admits that he was angry and that he was challenging Officer Swing (doc. no. 20, ¶11, citing Douglas Dep. 138-40).

Officer Swing testified it was dark, and the two occupants of the car he had stopped were to his back (doc. no. 20, ¶ 12). He had not yet determined whether there were any outstanding warrants for the two occupants of the other vehicle. He was alone, and plaintiff was making him nervous. Plaintiff, who the officer knew nothing about, was still in the van, and Officer Swing did not know if there were any weapons inside (¶ 12, citing Trial TR at 59-64).[5] Officer Swing told plaintiff to get out of the van, but plaintiff refused. Officer Swing repeated his command. Plaintiff got out of the van and in close proximity stepped toward the officer (Trial TR at 64). Officer Swing put his hand up to stop plaintiff from advancing toward him and told

---

[5]Although plaintiff underlines as "disputed" (doc. no. 34 at ¶ 12) the reference to the officer's trial testimony that he didn't know if there were any weapons in plaintiff's van, plaintiff fails to explain why he disputes this or how the officer could possibly know the contents of a stranger's van. Plaintiff does not point to any evidence that would contradict the officer's testimony. When one version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, --- U.S. ----, 127 S.Ct. 1769, 1776 (2007).

Douglas to put his hands behind his back because he was under arrest (Id.).

Plaintiff acknowledges that he refused to comply, saying "No way" (doc. no. 1, ¶ 6). Plaintiff even indicates he said "Oh shut up you asshole" (doc. no. 27 at 4, citing Douglas Dep. Ex. 2). Officer Swing requested backup, drew his taser, and warned plaintiff (Trial TR at 64). He ordered Douglas to put his hands behind his back six to eight times to no avail (doc. no. 20, ¶ 12, citing Trial TR at 66-67). Plaintiff disregarded Officer Swing's orders and lunged back into his van. When Officer Swing attempted to pull plaintiff from the van to arrest him, plaintiff kicked the officer in the face and groin, fought, and struggled (doc. no. 20, ¶ 13; Trial TR at 67). Although Officer Swing discharged his taser while struggling with plaintiff, plaintiff was wearing a heavy coat which rendered the taser ineffective (¶ 14). Plaintiff admits he was not injured, other than some minor bruising. Plaintiff stayed in the van blowing the horn (doc. no. 17, Douglas Dep. 55), while Officer Swing radioed for help a second time.

Milford Police Officer Bob West heard the radio request for an additional unit, responded pursuant to the Mutual Aid Agreement between the City of Milford and Miami Township, and drove to the scene (doc. no. 19, Exhibit A, West Aff. ¶¶ 3,5). Officer West did not know what had occurred, but he observed Officer Swing ordering plaintiff to exit the van, while plaintiff refused and continued blowing the horn (¶ 9). Officer West approached and ordered plaintiff to exit the vehicle. When plaintiff refused, he physically removed plaintiff from the vehicle (¶¶ 10-12). Plaintiff continued to kick, fight, and struggle with the officers. Officer Swing discharged his

"taser" several more times with little effect (¶¶ 13-17). Plaintiff broke loose and ran toward the front of his vehicle, but the officers managed to restrain and handcuff him (¶18; Trial TR 91). Meanwhile, the two occupants of the stopped vehicle waited over 30 minutes while the officers dealt with plaintiff. Both occupants witnessed the events at issue and described plaintiff as being "enraged" and "very violent" while kicking and hitting the officers. The witnesses described plaintiff as initiating the aggression toward the officers in this incident (which was videotaped by police cameras) (Trial TR 11-12, 21-22, 29-33, 35-38, 49).

Two other Miami Township police officers arrived and transported plaintiff to the Clermont County Jail (doc. no. 17, Douglas Dep. 74). Officer Swing charged plaintiff with three offenses for violating Ohio R.C. § 2921.31 for obstructing official business; § 2921.33 for resisting arrest; and § 2903.13 for assault on a police officer. Plaintiff's van was inventoried and towed, with defendant Officer Wahlert participating in this (doc. no. 33 at ¶ 18). Later that morning, plaintiff was released from jail and retrieved his van.

On May 14, 2009, a jury trial commenced on the three criminal charges against plaintiff in the Clermont County Municipal Court. At the close of the state's case, the judge dismissed the charge of "resisting arrest." The other two charges were submitted to the jury, which acquitted plaintiff of assault but could not reach a verdict on the charge of "obstruction of official business" (doc. no. 27 at 5). Plaintiff subsequently entered a plea of "no contest" to a reduced misdemeanor charge of "operating a vehicle on the sidewalk" pursuant to Ohio R.C. § 4511.711 (doc. no. 22-

3, TR of Plea Hearing).[6]

On January 14, 2010, plaintiff filed a seven-count federal complaint against Miami Township, the City of Milford, and three police officers (Officers John Swing, Melissa Wahlert, and Bob West).  Plaintiff sued the individual defendants in their individual and official capacities.  Plaintiff brought claims 1) pursuant to § 1983 for alleged violation of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments, including claims of unlawful seizure, excess force, violation of free speech, and his substantive and procedural due process rights;  2) pursuant to state law, for malicious prosecution, false arrest, and false imprisonment; and 3) pursuant to 42 U.S.C. § 1985(3) for conspiracy to violate his civil rights (doc. nos. 1 at ¶¶ 40-44;  28 at ¶ 3).

On February 28, 2011, the "Miami" defendants moved for summary judgment (doc. no. 19), and the "Milford" defendants subsequently also moved for summary judgment (doc. no. 21).  Plaintiff responded, and defendants replied.  This matter is now fully briefed and ripe for review.

## II.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant

---

[6]Defendants indicate that the trial judge's dismissal of the "resisting arrest" charge was legally erroneous, but that in light of the subsequent plea bargain, such dismissal was not appealed.

> summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587; Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010). In reviewing a motion for summary judgment, a court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

III. Issues Presented

Although plaintiff has presented numerous issues, the main issues before the Court are: whether Officers Swing and West had probable cause to arrest plaintiff, and thus, the defendant officers (including Officer Wahlert) are entitled to qualified

immunity in their individual capacities; and whether Milford Township and the City of Miami are liable under "respondeat superior" or any other theory.

IV. Analysis

A. Whether the Officers Had Probable Cause to Arrest Plaintiff; Whether a Constitutional Violation Occurred; and Whether the Officers are Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). The defendant police officers are sued in their individual capacities and will be entitled to qualified immunity unless: (1) the officers violated the plaintiff's constitutional rights; and (2) those rights were clearly established. Pearson, 555 U.S. at 232. The Court may consider the circumstances of the case and use its discretion in deciding which prong to address first. Id. at 236.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 236. The United States Supreme Court has repeatedly emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Harlow, 457 U.S. at 818; Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (observing that

the purpose of qualified immunity is to relieve officials from the burdens of discovery and costs of trial).  The present defendants' motions for summary judgment were filed after discovery had occurred, but well in advance of trial, and such motions have been ruled upon as early as practicable.

Plaintiff brings claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Plaintiff's § 1983 claims (and state claims) all arise from his arrest.  In determining whether the facts demonstrate that a constitutional violation occurred, the Court will first address the plaintiff's argument that his warrantless arrest was not based on probable cause. "[A]n arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law."  Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988).  This inquiry as to the existence of probable cause will also resolve plaintiff's state claims, as plaintiff must also show that probable cause was lacking in order to prevail on his state law claims of false arrest and false imprisonment. Ahlers v. Schebil, 188 F.3d 365, 372 (6th Cir. 1999); and see, e.g, Buttino v. City of Hamtramck, 87 Fed. Appx. 499, 502, 2004 WL 74655, *3 (6th Cir. 2004) (citing Criss,

867 F.2d at 262).

"Probable cause" is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. One 1984 Cadillac, 888 F.2d 1133, 1135 (6th Cir. 1989).  Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964);  Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); Crockett v. Cumberland College, 316 F.3d 571, 580 (6th Cir. 2003). Probable cause for arrest is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." Id.

Courts will consider the "factual and practical considerations of everyday life that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.... [W]hile officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." Wilson v. City of Livermore, 1 Fed.Appx. 334, *337, 2001 WL 45106, *3 (6th Cir. (Ky.))(citing Illinois v. Gates, 462 U.S. 213, 231 (1983)).  The test is whether it was "objectively reasonable for  [the officers] to believe that [their] actions were lawful at the time of the challenged act." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Although plaintiff is upset at being arrested and brought to trial, the

undisputed facts make it readily apparent that the officers had adequate probable cause to arrest him, initially for obstructing Officer Swing's traffic stop, and then for assault and resisting arrest. Officers Swing and West made reasonable decisions based upon the information available to them at the time they acted. See <u>Mayo</u>, 183 F.3d at 557 (finding that the arresting officer had acted reasonably under the circumstances). Here, Officer Swing's decision to arrest the plaintiff for his conduct in driving between cars over the curb and interfering with the traffic stop was objectively reasonable. His own observations of plaintiff's conduct gave him probable cause to arrest plaintiff for obstructing official business. Officer West's own observations provided ample grounds for him to assist Officer Swing in making this arrest.

Ultimately, plaintiff entered a plea bargain and pleaded "no contest" to a reduced misdemeanor offense of operating a vehicle on the sidewalk. Thus, the record reflects that this offense was not resolved in his favor, and plaintiff cannot now so claim. Plaintiff has not shown any "unreasonable seizure" of himself or his van under the Fourth Amendment. As no such constitutional violation occurred, the officers (including Officer Wahlert, who had only minimal involvement subsequent to plaintiff's arrest, i.e. the towing of the van) are entitled to qualified immunity.

With respect to plaintiff's state law claims, "liability for false arrest and false imprisonment attaches only when the claimant is arrested without probable cause." <u>Ahlers</u>, 188 F.3d at 374. Thus, claims for false arrest and false imprisonment against a police officer must fail where the plaintiff cannot show that the arrest was without

probable cause. <u>Evans v. Smith</u>, 97 Ohio App.3d 59, 70 (1994). Under Ohio law, false imprisonment is established if "a person confines another intentionally without lawful privilege and against his consent. . . " <u>Bennett v. Ohio Dep't of Rehab. & Corr.</u>, 60 Ohio St.3d 107, 109 (1991). The undisputed facts show that the officers arrested plaintiff upon adequate probable cause and lawfully detained him. Thus, defendants are entitled to summary judgment in their favor on plaintiff's state law claims for false arrest and false imprisonment.

Although plaintiff points to the dismissal of the charge of "resisting arrest," the fact that a charge is dismissed does not mean that the underlying arrest was unlawful. <u>Mayo v. Macomb County</u>, 183 F.3d 554, 557 (6th Cir. 1999) (holding that although underlying criminal charge was ultimately dismissed, plaintiff's arrest was lawful and did not provide basis for § 1983 action). Although plaintiff was acquitted of assault, "a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." <u>Criss</u>, 867 F.2d at 262; see also, e.g., <u>Johnson v. Ward,</u> 43 Fed.Appx. 779, 783-784 , 2002 WL 1774215, *3 (6th Cir. (Ky.))(rejecting argument that claim for false arrest accrued upon acquittal of criminal charges). As already noted, plaintiff entered a plea bargain on the remaining charge and cannot claim that the criminal prosecution was resolved in his favor.

Plaintiff's malicious prosecution claim fails for the same reasons. To sustain a state claim for malicious prosecution, a plaintiff must show: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. <u>Ash v. Ash</u>, 72 Ohio St.3d

520, 522 (1995). The present plaintiff was arrested upon probable cause and then lawfully prosecuted on three charges. See Evans, 97 Ohio App.3d at 69 ("the absence of probable cause is the gist of an action for malicious prosecution"). As defendants point out (doc. no. 30 at 25), plaintiff ignores the fact that his subsequent plea bargain and plea mean that the underlying criminal case was not resolved in his favor. The Ohio Supreme Court has explained that "a prosecution that is terminated by reason of a voluntary settlement or agreement of compromise with the accused is not . . . a termination in favor of the accused," Id. (finding that plaintiff's claim of malicious prosecution was barred) (citing 3 Restatement of Law, 2d., Torts (1977)).

## B. Whether the Officers Used Excessive Force in Arresting Plaintiff

Having determined that the undisputed facts conclusively establish that there was adequate probable cause for plaintiff's arrest, the Court will next consider plaintiff's claim that the officers used excessive force in making that arrest. All of the alleged use of force occurred before plaintiff was handcuffed in an effort to bring plaintiff under control and arrest him.

The parties agree that the inquiry of whether an officer's use of force was excessive is analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (U.S. 1989). The Court must balance the plaintiff's interest in being free from unlawful seizure with the government's interests, including the safety of police officers. Id. at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citing Terry v. Ohio, 392 U.S.

1, 22–27 (1968)). Whether that coercion was reasonable depends on a totality of the circumstances, including  "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).

The United States Supreme Court has held that the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation. Graham, 490 U.S. at 396-97.  Of course, some degree of physical coercion is constitutionally acceptable when police officers arrest an individual. Id. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id.

Although plaintiff contends that "driving on the sidewalk" did not warrant his arrest, plaintiff was charged with obstructing official business, an offense for which a person may properly be arrested.  It is also undisputed that the present plaintiff repeatedly ignored the officers' orders, was combative toward them, kicked and hit them, actively resisted their efforts to arrest him, and attempted to flee (i.e. when he bolted from the officers on foot).  The force used by the officers was reasonable under these circumstances.  See, e.g., Burchett v. Kiefer, 310 F.3d 937, 943-44 (6th

Cir. 2002) (holding that officers did not use excessive force when they tackled Burchett, wrestled his arms behind his back, and handcuffed him);  Thacker v. Lawrence County, 182 Fed.Appx. 464, 472 (6th Cir. 2006)(holding that officers did not apply excessive force when they tackled, wrestled, and handcuffed an "upset, loud, and swearing individual who refused to calm down"); Graves v. Bowles, Slip Copy, 2011 WL 1467944 (6th Cir. (Ky.)) (granting summary judgment in favor of defendants on claims of unlawful arrest and excessive force, and noting the officers' interest in protecting themselves from potentially dangerous suspect).  Both officers and both witnesses indicated that the present plaintiff was kicking and hitting the officers.[7] Upon hand-cuffing plaintiff, the officers ceased using any force against him.

Plaintiff admits to much of his combative behavior, but seeks to excuse it by claiming that Officer Swing was "outside his jurisdiction."  Although plaintiff persists in the mistaken notion that his arrest somehow violated the Fourth Amendment because Officer Swing was just over the line from Miami Township (doc. no. 27 at 13), this argument is untenable.  Plaintiff has no basis to complain of a traffic stop of someone else, and more importantly, Officer Swing was not required to ignore plaintiff's interference with that traffic stop.

Defendants correctly point out (doc. no. 30 at 14) that plaintiff's arrest in Milford by a Miami Township officer did not result in an unreasonable seizure under the Fourth Amendment. See State v. Weideman, 94 Ohio St.3d 501, 506 (2002)

---

[7]Despite plaintiff's combative behavior, the defendant officers managed to arrest and hand-cuff plaintiff without harming him.  Plaintiff concedes he was not injured, other than minor bruises.

(holding that city police officer who, outside of city limits, but based on probable cause, stopped motorist and detained her until state trooper arrived, did not act unreasonably under the Fourth Amendment, even though officer was outside his territorial jurisdiction); State v. Jones, 121 Ohio St.3d 103, 105 (2009). As the United States Supreme Court observed in Virginia v. Moore, 553 U.S. 164, 171 (2008), "[w]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."

With respect to the assistance rendered by Officer West, plaintiff acknowledged at deposition that Officer West did not make the decision to arrest him, did not strike him with a weapon, did not hit him with his fist or hand, did not kick him, did not draw his gun, did not take his taser out, did not transport plaintiff to the jail, and did not file any charges against him (doc. no. 19, citing Douglas Dep. 75, 111-112). In fact, plaintiff described Officer West as having acted professionally. Although plaintiff now disputes that Officer West "did not hit Douglas with his fist or hand" (doc. no. 34, ¶ 10 ), he cannot create a genuine dispute by contradicting his own testimony. In any event, given plaintiff's violent behavior, the force used by the officers in making the arrest was reasonable under the circumstances, and to their credit, did not result in any injury to plaintiff. Plaintiff has not shown that the officers violated his constitutional rights by using "excessive force."

To the extent plaintiff contends that Officer West did not listen to plaintiff's side of the story before assisting Officer Swing in the arrest, the United States

Supreme Court has observed that "we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence." Baker v. McCollan, 443 U.S. 137, 145–56 (1979). Similarly, the Court of Appeals for the Sixth Circuit has recognized that an arresting officer "does not have to investigate independently every claim of innocence." Gardenhire v. Schubert, 205 F.3d 303, 317 (6th Cir. 2000). An officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." Criss, 867 F.2d at 262. "To hold otherwise, would . . . allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.' " Id. As already discussed, Officer Swing had probable cause to arrest the plaintiff, and Officer West reasonably assisted Officer Swing in making that arrest. The facts do not demonstrate that any constitutional violation due to "excessive force" occurred. Officers West and Swing are entitled to qualified immunity.

C. Whether Plaintiff has Asserted any Viable Due Process Claims

Based on the facts of his arrest, plaintiff alleges in conclusory fashion that the defendants deprived him of his "due process rights" (doc. no. 1, ¶¶ 45-52). However, if a constitutional claim is covered by a specific constitutional provision, such as the First or Fourth Amendment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997). Thus, plaintiff's

claim for unlawful seizure and/or excessive force must be brought under the Fourth Amendment, not as a due process claim.  Plaintiff admits as much (doc. no. 27 at 25).  See also, Collins v. City of Harker Hts., Texas, 503 U.S. 115, 128 (1992)(observing that "the Due Process Clause is not meant to supplant traditional state tort law").

Plaintiff's complaint alleges in conclusory fashion that the defendants violated his procedural due process rights, but has not shown any such deprivation.  Plaintiff does not indicate how any state procedures were allegedly deficient.  Plaintiff received a jury trial in state court, was acquitted on one charge, and then chose to enter a plea bargain and plead no contest to a reduced misdemeanor charge.  Plaintiff has not alleged, and nothing in the record suggests, that Ohio's procedures were insufficient to vindicate his constitutional rights.  Plaintiff was able to retrieve his van on the same morning as his arrest, and plaintiff has not alleged, much less shown, any deficiencies in any state procedures.  See Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999) ("Because plaintiff failed to plead that post-deprivation remedies were inadequate, his claim on this issue was properly dismissed").  Plaintiff's own complaint indicates he received a jury trial in state court (doc. no. 1 at ¶ 20).  Plaintiff received all the process he was due.

## D.  Alleged First Amendment Violation

Plaintiff's allegation that he was arrested for his speech in violation of the First Amendment violation is also without merit.  Plaintiff was not arrested for any "protected speech."  See Colten v. Kentucky, 407 U.S. 104, 109-110 (1972) (finding that Colten, who was arrested for disorderly conduct, "was not engaged in activities

protected by the First Amendment"); King v. Ambs, 519 F.3d 607, 613 (6th Cir. 2008), rehearing and rehearing en banc denied (Jul 31, 2008) (same).  Rather, plaintiff was arrested for his conduct in interfering with the officer's duties in making a traffic stop.  It is undisputed that during a late night traffic stop, plaintiff angrily drove between the police cruiser and the stopped vehicle, up over the curb, and through the yard while yelling at the officer.  This combative behavior delayed the completion of Officer Swing's traffic stop, and plaintiff has no one but himself to blame for the escalation of events (and additional charges) that followed.  The record contradicts plaintiff's self-serving contention that he "did not do anything to interfere with the traffic stop" (doc. no. 27 at 15).

Plaintiff was admittedly belligerent when Officer Swing spoke with him, but contends that he engaged in protected First Amendment speech when he told Officer Swing "Oh shut up you asshole "(doc. no. 27 at 9-13).  Plaintiff contends that his arrest was the result of this "speech," rather than his overall behavior in driving between the vehicles over the curb and otherwise disrupting the officer's traffic stop.  Plaintiff's self-serving mischaracterization is unavailing.  The fact that plaintiff's disruptive behavior was followed by some words does not mean he was arrested in violation of the First Amendment for making "protected speech."  Defendants aptly point out that plaintiff "offers no evidence to support his claim that this comment – made in the midst of a lengthy confrontation that began well before this comment – was the motivating factor behind his arrest" (doc. no. 30 at 22).

Although plaintiff cites City of Houston, Tex. v. Hill, 451, 461 (1987) for the

general proposition that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," that case is readily distinguishable. The ordinance in <u>City of Houston</u> impermissibly criminalized constitutionally protected speech and gave police unconstitutional discretion in enforcement. The present plaintiff was not arrested under a statute that impermissibly prohibits speech, and plaintiff fails to explain any basis for his suggestion that the Ohio statute against "obstruction of official police business" may somehow be invalid.

**E.  Whether Plaintiff has Shown Any Basis for Municipal Liability**

The determination that officers did not violate any of plaintiffs' constitutional rights conclusively resolves the claims against Miami Township and the City of Milford. <u>Scott v. Clay County</u>, 205 F.3d 867, 879 (6th Cir. 2000), rehearing and suggestion for rehearing en banc denied (April 13, 2000) (observing that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well"); <u>Bukowski v. City of Akron</u>, 326 F.3d 702, 708 (6th Cir. 2003) (same).

It is also well-settled that actions brought against state actors (such as City of Milford and Miami Township) under § 1983 cannot be maintained only on a theory of respondeat superior. <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-691 (1978; <u>Dunn v. Tennessee</u>, 697 F.2d 121, 128 (6th Cir. 1982), cert. denied, 460 U.S. 1086 (1983). A plaintiff must identify an offending policy, practice or procedure for which the municipality is responsible. <u>Pembauer v. City of Cincinnati</u>,

475 U.S. 469, 479-481 (1986). The present plaintiff has not alleged, much less produced any evidence of, a specific city policy or practice that violated his constitutional rights. Although plaintiff claims in conclusory fashion that Officer Swing was a "supervisory" official, the fact that a police officer or official has some discretion in performing his job duties does not make him a policymaker. <u>Miller v. Calhoun County</u>, 408 F.3d 803, 818 (6th Cir. 2005).

To the extent plaintiff alleges claims against the individual defendants in their official capacities, a suit against a government employee in "official" capacity is essentially a suit against the government entity itself. The proper party defendant is the governmental entity. Plaintiff does not dispute this well-settled point of law. Hence, for the foregoing reasons, the individual defendants would also be entitled to summary judgment on any claims against them in their official capacity. The analysis against the defendants need not proceed any further, although they also point out that, under Ohio law, governmental entities are immune from intentional tort claims (doc. nos. 21 at 28; 30 at 21). Under Ohio law, the officers, acting in their official capacity, are immune from liability for injury for actions that are neither manifestly outside the scope of their responsibilities, malicious, in bad faith, wanton, nor reckless. Ohio Rev.Code § 2744.03(A)(6).

## F. Conspiracy Claim

Plaintiff also alleges under 42 U.S.C. § 1985(3) that the defendants "conspired" to violate his constitutional rights by engaging in conduct that led to his false arrest, false imprisonment and malicious prosecution. Plaintiff's attenuated allegations are

conclusory and unsupported by any facts.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen. Volunteer Medical Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 223 (6th Cir.1991) (citing United Bd. of Carpenters & Joiners v. Scott, 463 U.S. 825 (1983).

Plaintiff does not allege any facts showing that the defendants actually "conspired" with one another to violate plaintiff's civil rights. Plaintiff merely describes various events and speculates that these are result of a purported conspiracy. Absent any evidence of an agreement, such speculation is insufficient to support a claim of conspiracy. Farat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004) (holding that vague conclusory allegations unsupported by material facts are insufficient to state a § 1985 claim).

Plaintiff's conspiracy claim brought under 42 U.S.C. § 1985 cannot survive the defendants' motions for summary judgment. Plaintiff merely alleges in his complaint that the defendants individually took actions that he labels as being in furtherance of a conspiracy. See Kensu v. Haigh, 87 F.3d 172, 175-76 (6th Cir. 1996) (observing that plaintiff's conclusory allegations were insufficient to set forth a viable conspiracy claim). Plaintiff merely recites the actions by various officers who were

performing their official duties and sets forth no facts regarding any purported "agreement."  Plaintiff has not put forth any evidence or facts suggesting that there was any actual agreement or plot by the defendants to arrest him for a crime he did not commit.   Even construing the evidence in the light most favorable to plaintiff, plaintiff's claim of conspiracy is baseless.  Indeed, plaintiff has not supported this claim with any evidence or developed argument and appears to have abandoned it.

To the extent plaintiff refers to "equal protection" in his conspiracy claim, plaintiff does not allege any facts indicating that the defendants treated him any differently than any other similarly-situated arrestee, i.e. an individual who was physically combative and  actively resisting arrest.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 565 (2000);  <u>Aldridge v. City of Memphis</u>, 404 Fed.Appx. 29, 42 (6th Cir. 2010), cert. denied, 131 S.Ct. 2932 (2011).

## V.  Conclusion

The officers had probable cause to arrest plaintiff, and the defendants are entitled to summary judgment on all of plaintiff's claims, including the claims under § 1983 for violation of the First, Fourth, Fifth, and Fourteenth Amendments and for the Ohio claims of false arrest, false imprisonment, and malicious prosecution.  The evidence shows that no constitutional violation occurred and that the individual officers are all entitled to qualified immunity.  Absent any constitutional violation, the City of Milford and Miami Township are not liable, and in any event, would not be liable under the theory of respondeat superior.  Plaintiff  has not identified any policy or custom that would subject them to liability.   Finally, the defendants are also

entitled to summary judgment on plaintiff's claim of "conspiracy," as plaintiff has not pointed to any actual facts or evidence showing any purported agreement to violate his civil rights.  For all these reasons, the defendants are entitled to summary judgment.

## VI.  Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion to grant requests for oral argument. Here, the parties have not requested oral argument.  Moreover, the briefs and exhibits are clear on their face, and oral argument is not warranted.  See Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992) (pursuant to local rules, and absent a request for oral argument, motions for summary judgment may be decided on written briefs).

Accordingly, the defendants' motions for summary judgment (doc. nos. 19, 21) are both GRANTED;  this case is DISMISSED and TERMINATED on the docket of this Court; costs shall be born by plaintiff.

IT IS SO ORDERED.

_____ s/Herman J. Weber _____
Herman J. Weber, Senior Judge
United States District Court